_____FILED  _____ENTERED
_____LODGED_____RECEIVED

MAY 1 8 2006  **DJ**

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY                                    DEPUTY

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

9  LAWRENCE HILDES, KAREN WEILL,
   LEGRAND JONES and WES HAMILTON,
          Plaintiffs,

10

11        vs.

12  CITY OF SEATTLE; SEATTLE POLICE
    DEPARTMENT; THE LAW
13  ENFORCEMENT INTELLIGENCE UNIT
    TUKWILA POLICE DEPARTMENT,
14  BURIEN POLICE DEPARTMENT,
    RENTON POLICE DEPARTMENT,
15  REDMOND POLICE DEPARTMENT,
    KING COUNTY SHERIFF'S OFFICE,
16  CAPTAIN MICHAEL SANFORD,
    individually and in his official capacity as a
17  CAPTAINOF THE SEATTLE POLICE
    DEPARTMENT; and JANE DOE SANFORD,
18  his wife, and the marital community there of;
    CHIEF R. GIL KERLIKOWSKE individually
19  and in his capacity as the CHIEF of the
    SEATTLE POLICE DEPARTMENT and JANE
20  DOE KERLIKOWSKE and the marital
    community composed thereof; CLARK
21  KIMERER, individually and in his capacity as a
    DEPUTY CHIEF of the SEATTLE POLICE
22  DEPARTMENT And JANE DOE KIMERER
    and the marital community composed thereof;
23  ASSISTANT CHIEF JIM PUGEL, individually
    and in his official capacity as an ASST. CHIEF of
24

25  COMPLAINT FOR DAMAGES –
    Page 1 of 75

CASE N●**V6**·  **707**

COMPLAINT FOR CIVIL RIGHTS
VIOLATIONS UNDER 42 USC 1983;
BATTERY, ASSAULT, TRESPASS TO
CHATTEL, CONVERSION, INTENTIONAL
INFLICTION OF EMOTIONAL DISTRESS



**06-CV-00707-CMP**

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

**ORIGINAL**

1   the SEATTLE POLICE DEPARTMENT and
JANE DOE PUGEL and the marital community
2   composed thereof; STEVE WILSKE,
individually   and in his Official capacity as a
3   LIEUTENANT OF THE SEATTLE
POLICE DEPARTMENT, and JANE DOE
4   WILSKE and the marital community
composed thereof; J.K. DYMENT,
5   individually and in her Official capacity as a
SERGEANT of the SEATTLE
6   POLICE DEPARTMENT AND JOHN DOE
DYMENT, and the marital community
7   composed thereof; A.C. PRICE,
individually and in his Official capacity as a
8   SERGEANT OF the SEATTLE POLICE
DEPARTMENT, and JANE DOE PRICE and the
9   marital community composed thereof; G.
CALDER, individually and in his Official
10   capacity as a LIEUTENANT of the SEATTLE
POLICE DEPARTMENT and JANE DOE
11   CALDER and the marital community
composed thereof; J.J. JANKAUSKAS,
12   individually and in his official capacity as a
LIEUTENANT of the SEATTLE POLICE
13   DEPARTMENT and JANE DOE
JANKAUSKAS, and the marital
14   community thereof; M.A. COOMES,
individually and in his Official capacity
15   as a SERGEANT of the SEATTLE POLICE
DEPARTMENT and JANE DOE COOMES and
16   the marital community thereof; D.R. LOWE,
individually and in his Official capacity as a
17   SERGEANT of the SEATTLE POLICE
DEPARTMENT and JANE DOE LOWE and the
18   marital community thereof; J.J. MAGAN    ,
individually and in his official capacity
19   as a SERGEANT of the SEATTLE POLICE
DEPARTMENT and JANE DOE MAGAN and
20   the marital community thereof; SGT. BRADY,
individually and in his Official capacity as a
21   SERGEANT of the SEATTLE POLICE
DEPARTMENT, and JANE DOE BRADY and
22   the marital community thereof; SGT.
BROTHERTON, individually and in his Official

23

24

25 COMPLAINT FOR DAMAGES –
Page 2 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   capacity as a SERGEANT of the SEATTLE
POLICE DEPARTMENT, and JANE DOE
2   BROTHERTON and the marital community
thereof; DETECTIVE R. ROMERO,
3   individually and in his Official capacity as a
DETECTIVE of the SEATTLE POLICE
4   DEPARTMENT and JANE DOE ROMERO and
the marital community thereof; P.C. WALL,
5   individually and in his Official capacity as an
OFFICER of the SEATTLE POLICE
6   DEPARTMENT, and JANE DOE WALL and
the marital Community thereof; D.D.
7   DARNALL, individually and in his Official
capacity as an OFFICER of the SEATTLE
8   POLICE DEPARTMENT, and JANE DOE
DARNALL and the marital community thereof;
9   R. NELSON, individually and in his Official
capacity as an OFFICER of the SEATTLE
10   POLICE DEPARTMENT and JANE DOE
NELSON and the marital community thereof G.
11   NELSON, individually and in his Official
capacity as a SERGEANT of the SEATTLE
12   POLICE DEPARTMENT, and JANE DOE
NELSON and the marital Community thereof;
13   MATTHEW M. DIESZI, Individually and in his
Official capacity as an Officer of the SEATTLE
14   POLICE DEPARTMENT and JANE DOE
DIESZI and the marital community thereof; K.
15   SWANK, individually and in his Official capacity
as an OFFICER of the SEATTLE POLICE
16   DEPARTMENT and JANE DOE SWANK and
the marital community thereof; TAD K.
17   WILLOUGHBY, individually and in his Official
capacity as a SERGEANT of the SEATTLE
18   POLICE DEPARTMENT, and JANE DOE
WILLOUGHBY and the marital community
19   thereof; MICHAEL WHIDBEY, individually and
in his Official capacity as a DETECTIVE of the
20   SEATTLE POLICE DEPARTMENT and JANE
DOE WHIDBEY and the marital community
21   thereof; VERNER O'QUIN, individually and in
his Official capacity as a SERGEANT of the
22   SEATTLE POLICE DEPARTMENT and JANE
DOE O'QUIN and the marital community
23   
24   
25   COMPLAINT FOR DAMAGES –
Page 3 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   thereof; SGT. JANDOC, individually and in his
Official capacity as a SERGEANT of the
2   SEATTLE POLICE DEPARTMENT and JANE
DOE JANDOC and the marital community
3   thereof; OFFICER LANDERS, individually and
in his Official capacity as an Officer of the
4   SEATTLE POLICE DEPARTMENT and JANE
DOE LANDERS and the marital community
5   thereof; LOREN R. STREET individually and in
his Official capacity as an OFFICER of the
6   SEATTLE POLICE DEPARTMENT and JANE
DOE STREET and the marital community
7   thereof; P.J. FOX, individually and in his Official
capacity as an OFFICER of the SEATTLE
8   POLICE DEPARTMENT, and JANE DOE FOX
and the marital community thereof; THOMAS M.
9   MOONEY, individually and in his Official
capacity as an OFFICER of the SEATTLE
10   POLICE DEPARTMENT, and JANE DOE
MOONEY and the marital community thereof; K.
11   ZEIGER, individually and in his Official
capacity as an OFFICER of the SEATTLE
12   POLICE DEPARTMENT, and JANE DOE
ZEIGER and the marital community thereof; J.J.
13   LEE, individually and in his Official capacity as
an OFFICER of the SEATTLE POLICE
14   DEPARTMENT, and JANE DOE LEE and the
marital community thereof; RIK K. HALL,
15   individually and in his Official capacity as an
OFFICER of the SEATTLE POLICE
16   DEPARTMENT, and JANE DOE HALL and
the marital community thereof; M. LANZ,
17   individually and in his Official capacity as an
OFFICER OF THE SEATTLE POLICE
18   DEPARTMENT, and JANE DOE LANZ and the
marital community thereof; PATRICIA A.
19   MACDONALD, individually and in her capacity
as an OFFICER of the SEATTLE POLICE
20   DEPARTMENT and JOHN DOE
MACDONALD and the marital community
21   thereof; WALTER M. HAYDEN, individually
and in his Official capacity as an OFFICER of the
22   SEATTLE POLICE DEPARTMENT, and JANE
DOE HAYDEN and the marital community
23

24

25   COMPLAINT FOR DAMAGES –
Page 4 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  thereof; MARK A. GRINSTEAD, individually
   and in his Official capacity as an Officer of the
2  SEATTLE POLICE DEPARTMENT, and JANE
   DOE GRINSTEAD and the marital community
3  thereof; TOMMIE M. DORAN, individually and
   in his Official capacity as an OFFICER of the
4  SEATTLE POLICE DEPARTMENT and JANE
   DOE DORAN and the marital community
5  thereof; ADRIAN Z. DIAZ, individually and in
   his Official capacity as a SERGEANT of the
6  SEATTLE POLICE DEPARTMENT, and JANE
7  DOE DIAZ and the marital community thereof;
   CHAD L. MCLAUGHLIN, individually and in
8  his Official capacity as an OFFICER of the
   SEATTLE POLICE DEPARTMENT, and JANE
9  DOE MCLAUGHLIN and the marital
   community thereof; BRAD CONWAY,
10 individually and in his Official capacity as an
11 Officer of the SEATTLE POLICE
   DEPARTMENT, and JANE DOE CONWAY
12 and the marital community thereof; MATTHEW
   BRADRICK, individually and in his Official
13 capacity as an OFFICER of the SEATTLE
   POLICE DEPARTMENT, and JANE DOE
14 BRADRICK and the marital community thereof;
   DAVID FITZGERALD, individually and in his
15 Official Capacity as an OFFICER of the
   SEATTLE POLICE DEPARTMENT and JANE
16 DOE FITZGERALD and the marital community
17 thereof; RANDALL A. JOKELA, individually
   and in his Official capacity as an OFFICER of the
18 SEATTLE POLICE DEPARTMENT, and JANE
   DOE JOKELA and the marital community
19 thereof; GEORGE HISSUNG JR, individually
   and in his Official capacity as an OFFICER of the
20 SEATTLE POLICE DEPARTMENT, and JANE
   DOE HISSUNG and the marital community
21 thereof; JASON G. DRUMMOND, individually
   and in his Official capacity as an OFFICER of the
22 SEATTLE POLICE DEPARTMENT, and JANE
   DOE DRUMMOND and the marital community
23 thereof; JOHN A. DIAZ, individually and in his
24 Official capacity as an OFFICER of the
   SEATTLE POLICE DEPARTMENT, and JANE
25

COMPLAINT FOR DAMAGES –
Page 5 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

DOE DIAZ and the marital community thereof;
OFFICER MCCRAE, individually and in his
Official capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT, and JANE
DOE MCCRAE and the marital community
thereof JAMES B. PATCHEN, individually and
in his Official capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT and JANE
DOE PATCHEN and the marital community
thereof; MICHAEL M. SUDDUTH, individually
and in his Official capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT, and JANE
DOE SUDDUTH and the marital community
thereof; WILLIE WILLIAMS, individually and
in his Official capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT, and JANE
DOE WILLIAMS and the marital community
thereof; W. CRAVENS, individually and in his
Official capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT, and JANE
DOE CRAVENS and the marital community
thereof; R. BOURNES, individually and in his
Official capacity as an OFFICER of the
SEATTLE POLICE DEPARTMENT, and JANE
DOE BOURNES and the marital community
thereof; MARK L. WORSTMAN, individually
and in his Official capacity as a SERGEANT of
the SEATTLE POLICE DEPARTMENT, and
JANE DOE WORSTMAN, BILL GARDINER,
individually and in his Official capacity as a
LIEUTENANT of the WASHINGTON STATE
PATROL, and JANE DOE GARDINER and the
marital community thereof; MARK W.
LAMOREAUX, individually and in his Official
capacity as a LIEUTENANT of the
WASHINGTON STATE PATROL, and JANE
DOE LAMOREAUX and the marital community
thereof; SHAWN BERRY, individually and in
his Official capacity as a DETECTIVE of the
WASHINGTON STATE PATROL, and JANE
DOE BERRY and the marital community
thereof; JAMES A. CHROMEY, individually and
in his Official capacity as a LIEUTENANT of the
WASHINGTON STATE PATROL, and JANE

COMPLAINT FOR DAMAGES –
Page 6 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  DOE CHROMEY and the marital community thereof; DAVID W. BOURLAND, individually

2  and in his Official capacity as a TROOPER of the WASHINGTON STATE PATROL,  and JANE

3  DOE BOURLAND and the marital community thereof; CURT G. BOYLE, individually and in

4  his Official capacity as a TROOPER of the WASHINGTON STATE PATROL, and JANE

5  DOE BOYLE and the marital community thereof; RICARDO BRITO, individually and in

6  his Official capacity as a TROOPER of the WASHINGTON STATE PATROL, and JANE

7  DOE BRITO and the marital community thereof; DARIN F. DE RUWE, individually and in his

8  Official capacity as a TROOPER of the WASHINGTON STATE PATROL, and JANE

9  DOE DE RUWE and the marital community thereof; BRYAN R. DUCOMMUN, individually

10  and in his Official capacity as a TROOPER of the WASHINGTON STATE PATROL, and JANE

11  DOE DUCOMMUN   and the marital community thereof; ANN E. DUTTON,

12  individually and in her Official Capacity as a DETECTIVE of the WASHINGTON STATE

13  PATROL, and JOHN  DOE DUTTON and the marital community thereof; KEVIN L.

14  FORRESTER, individually and in his Official capacity as a DETECTIVE of the

15  WASHINGTON STATE PATROL, and JANE DOE FORRESTER and the marital community

16  thereof; JOEL W. GORDON, individually and in his Official capacity as a DETECTIVE of the

17  WASHINGTON STATE PATROL, and JANE DOE GORDON and the marital community

18  thereof; CHRIS T. GUNDERMANN, individually and in his Official capacity as a

19  SERGEANT of the WASHINGTON STATE PATROL,  and JANE  DOE GUNDERMANN

20  and the marital community thereof; JOI  J. HANER, individually and in her Official capacity

21  as a TROOPER of the WASHINGTON STATE PATROL, and JOHN DOE HANER and the

22  marital  community thereof; ROGER D. HANSBERRY, individually and in his Official

23

24

25  COMPLAINT FOR DAMAGES –
   Page 7 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   capacity as a TROOPER of the WASHINGTON
STATE PATROL, and JANE DOE
2   HANSBERRY and the marital community
thereof; RUSSELL J. HANSON, individually and
3   in his Official capacity as a TRROPER of the
WASHINGTON STATE PATROL, and JANE
4   DOE HANSON and the marital community
thereof; JEFFREY R. KERSHAW, individually
5   and in his Official capacity as a DETECTIVE of
the WASHINGTON STATE PATROL, and
6   JANE  DOE KERSHAW and the marital
7   community thereof; DANIEL L. MANN,
individually and in      his Official capacity as a
8   DETECTIVE of the WASHINGTON STATE
PATROL,  and JANE  DOE MANN and the
9   marital community thereof; GEORGE R. MARS,
JR., individually and in his Official capacity as a
10   DETECTIVE of the WASHINGTON STATE
11   PATROL, and JANE DOE MARS and the
marital community thereof; JOHN G.
12   MCMULLEN, individually and in his Official
capacity as a TROOPER of the WASHINGTON
13   STATE PATROL and JANE DOE
MCMULLEN and the marital community
14   thereof; DARRELL R. NOYES, individually and
in his Official capacity as a TROOPER of the
15   WASHINGTON STATE PATROL, and JANE
16   DOE NOYES and the marital community
thereof; STEVEN E. REEVES, individually and
17   in his Official capacity as a TROOPER of the
WASHINGTON STATE PATROL and JANE
18   DOE REEVES and the marital community
thereof; WESLEY H. RETHWILL, individually
19   and in his Official capacity as a SERGEANT of
the WASHINGTON STATE PATROL, and
20   JANE DOE RETHWILL and the marital
community thereof; CRAIG L. SAHLINGER,
21   individually and in his Official capacity as a
TROOPER of the WASHINGTON STATE
22   PATROL, and JANE DOE SAHLINGER and the
marital community thereof; DAVID J.
23   BROWNE, individually and in his Official
capacity as a SERGEANT of the
24   WASHINGTON STATE PATROL, and JANE

25   COMPLAINT FOR DAMAGES –
Page 8 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   DOE BROWNE and the marital community
    thereof; GARY D. GASSELING, individually
2   and in his Official capacity as a SERGEANT of
    the WASHINGTON STATE PATROL, and
3   JANE DOE GASSELING and the marital
    community thereof; PAUL M. STANEK III.,
4   individually and in his Official capacity as a
    DETECTIVE of the WASHINGTON STATE
5   PATROL, and JANE DOE STANEK and the
    marital community thereof; RICHARD A.
6   TAYLOR, individually and in his Official
    capacity as a DETECTIVE of the
7   WASHINGTON STATE PATROL, and JANE
    DOE TAYLOR and the marital community
8   thereof; GARY M. WILCOX, individually and in
    his Official capacity as a DETECTIVE of the
9   WASHINGTON STATE PATROL, and JANE
    DOE WILCOX and the marital community
10  thereof; OREST D. WILSON, individually and in
    his Official capacity as a DETECTIVE of the
11  WASHINGTON STATE PATROL, and JANE
    DOE WILSON and the marital community
12  thereof; RONALD W. SERPAS, individually and
    in his Official capacity as the CHIEF of the
13  WASHINGTON STATE PATROL, and JANE
    DOE SERPAS and the marital community
14  thereof; DANIEL E. EIKEM, individually and in
    his official capacity as a CAPTAIN of the
15  WASHINGTON STATE PATROL, and JANE
    DOE EIKEM and the marital community thereof;
16  STEVEN D. MCCULLEY, individually and in
    his Official capacity as a LIEUTENANT of the
17  WASHINGTON STATE PATROL, and JANE
    DOE MCCULLEY and the marital community
18  thereof; VANCE PROCTER; and DOES 1-5000,

19

20                     Defendants.

21

22

23      LAWRENCE HILDES, KAREN WEILL, LEGRAND JONES and WES HAMILTON, the

24  Plaintiffs herein, by and through their attorneys, allege as follows:

25  COMPLAINT FOR DAMAGES -
    Page 9 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

## I.  INTRODUCTION

1.1     Plaintiffs are citizens of Washington who attended a demonstration which took place in downtown Seattle on the evening of June 2, 2003.  The Plaintiffs were there to act as legal observers of the planned protest of policies and actions of an organization called the Law Enforcement Intelligence Unit (LEIU), which had gathered intelligence on lawful activists.  All of the Plaintiffs exercised their First Amendment rights by doing their duties as legal observers in full accordance with the law.  Yet, without provocation or legitimate law enforcement purpose, and without reasonable or adequate warning, the Seattle Police Department and its agents used excessive force against the Plaintiffs and made an unreasonable seizure of the Plaintiffs by violating their rights under the Fourth, and Fourteenth Amendments to the United States Constitution; and rights under the Washington Constitution, the Seattle Police Department unreasonably interfered with Plaintiffs' First Amendment Rights and as a result Plaintiffs were chilled in the future exercise of their First Amendment Rights.  The Seattle Police Department assaulted and battered Plaintiffs by 1) dousing them with chemical weapons including OC sprayed at close range, including directly into their faces and/or 2) shooting rubber bullets and other projectiles including "wooden dowels", "flying batons", and "pepper-balls" at Plaintiffs at close range, directly hitting Plaintiff Hildes, and/or 3) Striking Plaintiffs with hands, feet, batons, bicycles, and other instruments.  These actions caused Plaintiffs serious physical and emotional harm, detriment and suffering.  Defendants specifically targeted Plaintiffs, who were readily identifiable in bright green t-shirts and hats that prominently displayed the words "NATIONAL LAWYERS GUILD LEGAL OBSERVERS" across them.

1.2     The Seattle Police Department has a pattern and practice of flagrantly violating peaceful demonstrators' First Amendment Rights and using excessive force in other demonstrations held in Seattle, Washington on a continuing and regular basis.  The Seattle Police Department also has a history of arresting and assaulting legal observers who are violating no

COMPLAINT FOR DAMAGES –
Page 10 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

law, interfering with no police action, and simply doing their job.

1.3     Plaintiffs seek compensatory and punitive damages along with injunctive relief and declaratory relief from the defendants pursuant to 42 USC § 1983, and compensatory damages from the City of Seattle pursuant to the Washington Tort Claims Act.

1.4     Plaintiffs seek injunctive relief in the form of a court ordered ban on the use of less lethal weaponry including chemical weapons, pepper-balls, rubber bullets, flying batons, wooden dowels, stinger ball grenades, flash bang grenades and other related items for crowd control of peaceful demonstrations, and in the form of restrictions on the way the Seattle Police Department responds to and treats Legal Observers.

## I. JURISDICTION

1. This court has jurisdiction over the subject matter of this action pursuant to Title 28, United States Code Sections 1331, 1332, 1343, and 1367, and venue is properly set in the Western District Federal Court pursuant to 28 U.S.C. 1391.

2. The claims upon which this suit is based occurred in this judicial district.

3. Plaintiffs are informed and believe, and on that basis allege, that each of the named Defendants, except for VANCE PROCTER who is a resident of Los Angeles County, California, reside in this judicial district, and all entity Defendants, except for the Law Enforcement Intelligence Unit, which is a registered California non-profit, are registered and do business in the District as their principal base of operations.

## II. PARTIES

COMPLAINT FOR DAMAGES –
Page 11 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1.1     Plaintiff LAWRENCE HILDES is a married male residing in the State of Washington, County of Whatcom, in the Western District of Washington, who was acting lawfully within his First Amendment Rights as legal observer in a peaceful permitted demonstration. He was singled out for illegal and tortious treatment because he was clearly identified as a legal observer. He was struck by a less-lethal projectile and was exposed to pepper spray. He suffered severe physical and psychological harm and monetary loss as a direct result. The incidents herein alleged occurred in King County within the Western District of Washington.

1.2     Plaintiff KAREN WEILL is a married female residing in the State of Washington, County of Whatcom, in the Western District of Washington, who was acting lawfully within her First Amendment Rights as a legal observer of a peaceful permitted demonstration. She was singled out for illegal and tortious treatment because she was clearly identified as a legal observer. She was intentionally struck by a defendant officer's bicycle and exposed to pepper spray. As a direct result, she suffered severe physical and emotional harm. The incidents herein alleged occurred in King County within the Western District of Washington.

1.3     Plaintiff LEGRAND JONES is a married man residing primarily in the State of Washington, County of Thurston, in the Western District of Washington as acting lawfully within his First Amendment Rights as legal observer in a peaceful permitted demonstration. He was singled out for illegal and tortious treatment because he was clearly identified as a legal observer. He was exposed to pepper spray. He suffered severe physical and psychological harm and monetary loss as a direct result. The incidents herein alleged occurred in King County within the Western District of Washington.

COMPLAINT FOR DAMAGES –
Page 12 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1.4     Plaintiff WES HAMILTON is a single male residing primarily in the State of Washington, County of Thurston, in the Western District of Washington, who was acting lawfully within his First Amendment Rights as legal observer in a peaceful permitted demonstration.  He was singled out for illegal and tortious treatment because he was clearly identified as a legal observer.  He was exposed to pepper spray, and was struck repeatedly with batons and other weapons by police, causing severe injuries and great pain.  He suffered severe physical and psychological harm and monetary loss as a direct result.  The incidents herein alleged occurred in King County within the Western District of Washington.

2.0   The CITY OF SEATTLE is a municipal corporation located within the Western District of Washington, and organized under the laws of the State of Washington.  The SEATTLE POLICE DEPARTMENT is a sub-entity of the CITY OF SEATTLE.

2.1   The TUKWILA POLICE DEPARTMENT is a sub-entity of the City of Tukwila, a municipal corporation located within the Western District of Washington, and organized under the laws of the State of Washington.

2.2 The BURIEN POLICE DEPARTMENT is a sub-entity of the City of Burien, a municipal corporation located within the Western District of Washington, and organized under the laws of the State of Washington.

2.3 The RENTON POLICE DEPARTMENT is a sub-entity of the City of Renton, a municipal corporation located within the Western District of Washington, and organized under the laws of the State of Washington.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.4 The REDMOND POLICE DEPARTMENT is a sub-entity of the City of Redmond, a municipal corporation located within the Western District of Washington, and organized under the laws of the State of Washington.

2.5   The KING COUNTY SHERIFF'S OFFICE is a sub-entity of the COUNTY OF KING, a municipal corporation located within the Western District of Washington, and organized under the laws of the State of Washington.

2.6   The LAW ENFORCEMENT INTELLIGENCE UNIT, herein after referred to as the LEIU, is a private non-profit, registered in California, made up virtually entirely of public employees of law enforcement agencies, that does substantial business in Washington, and reasonably and purposely avails itself of the laws of the State of Washington, and was purposefully involved in the incidents herein alleged, and therefore is subject to the jurisdiction of this court.

2.7      Captain MICHAEL SANFORD and Jane Doe SANFORD constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, MICHAEL SANFORD was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT acting within the scope of his duties as a CAPATIN of the SEATTLE POLICE DEPARTMENT, AND AS THE INCIDENT COMMANDER for the event in question.

2.8 R. GIL KERLIKOWSKE and Jane Doe KERLIKOWSKE constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, KERLIKOWSKE was at

COMPLAINT FOR DAMAGES ~
Page 14 of 75

the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT acting within the scope of his duties as the CHIEF of the SEATTLE POLICE DEPARTMENT.

2.9     DEPUTY CHIEF CLARK KIMERER and JANE DOE KIMERER constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, CLARK KIMERER was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT acting within the scope of his duties as a DEPUTY CHIEF of the SEATTLE POLICE DEPARTMENT.

2.10   ASSISTANT CHIEF JIM PUGEL and JANE DOE PUGEL constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, Tim JANE DOE PUGEL was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT acting within the scope of his duties as an ASSISTANT CHIEF of the SEATTLE POLICE DEPARTMENT.

2.11    LIEUTENANT STEVE WILSKE and JANE DOE WILSKE constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, STEVE WILSKE was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT acting within the scope of his duties as a LIEUTENANT of the SEATTLE POLICE DEPARTMENT.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.12   SERGEANT J.K. DYMENT and JOHN DOE DYMENT constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, J.K. DYMENT was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT, acting within the scope of her duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

2.13   SERGEANT A.C. PRICE and JANE DOE PRICE constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, A.C PRICE was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

2.14   LIEUTENANT G. CALDER and JANE DOE CALDER constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, G. CALDER was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a LIEUTENANT of the SEATTLE POLICE DEPARTMENT.

2.15   LIEUTENANT J.J. JANKAUSKAS and JANE DOE JANKAUSKAS constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, J.J. JANKAUSKAS was at the time of the injuries complained of in this complaint, an employee

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a
LIEUTENANT of the SEATTLE POLICE DEPARTMENT.

2.16   SERGEANT M.A. COOMES and JANE DOE COOMES constitute a marital
community under the laws of the State of Washington and upon belief reside within KING
County within the Western District of Washington State. Upon belief, M.A. COOMES was at
the time of the injuries complained of in this complaint, an employee and/or agent of the CITY
OF SEATTLE acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE
DEPARTMENT.

2.17   SERGEANT D.R. LOWE and JANE DOE LOWE constitute a marital community
under the laws of the State of Washington and upon belief reside within KING County within the
Western District of Washington State. Upon belief, D.R. LOWE was at the time of the injuries
complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting
within the scope of his duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

2.18   SERGEANT J.J. MAGAN and JANE DOE MAGAN constitute a marital
community under the laws of the State of Washington and upon belief reside within KING
County within the Western District of Washington State. Upon belief, J.J. MAGAN was at the
time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF
SEATTLE acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE
DEPARTMENT.

2.19   SERGEANT BRADY and JANE DOE BRADY constitute a marital community
under the laws of the State of Washington and upon belief reside within KING County within the
Western District of Washington State. Upon belief, SGT. BRADY was at the time of the injuries

COMPLAINT FOR DAMAGES –
Page 17 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting

2  within the scope of his duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

3      2.20  SERGEANT BROTHERTON and JANE DOE BROTHERTON constitute a

4  marital community under the laws of the State of Washington and upon belief reside within

5  KING County within the Western District of Washington State. Upon belief, SGT.

6  BROTHERTON was at the time of the injuries complained of in this complaint, an employee

7  and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT

8  of the SEATTLE POLICE DEPARTMENT.

9

10      2.21  DETECTIVE R. ROMERO and JANE DOE ROMERO constitute a marital

11  community under the laws of the State of Washington and upon belief reside within KING

12  County within the Western District of Washington State. Upon belief, R. ROMERO was at the

13  time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF

14  SEATTLE acting within the scope of his duties as a DETECTIVE of the SEATTLE POLICE

15  DEPARTMENT.

16      2.22  P.C. WALL and JANE DOE WALL constitute a marital community under the laws

17  of the State of Washington and upon belief reside within KING County within the Western

18  District of Washington State. Upon belief, P.C. WALL was at the time of the injuries

19  complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting

20  within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

21

22      2.23  D.D. DARNALL and JANE DOE DARNALL constitute a marital community

23  under the laws of the State of Washington and upon belief reside within KING County and

24  within the Western District of Washington State. Upon belief, D.D. DARNAL was at the time of

25  COMPLAINT FOR DAMAGES –
Page 18 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.24   R. NELSON and JANE DOE NELSON constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, R. NELSON was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.25   G. NELSON and JANE DOE NELSON constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, G. NELSON was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

2.26   MATTHEW M. DIESZI and JANE DOE DIESZI constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, MATTHEW M. DIESZI was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.27   K. SWANK and JANE DOE SWANK constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, K. SWANK was at the time of the injuries

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.28    TAD K. WILLOUGHBY and JANE DOE WILLOUGHBY constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, TAD K. WILLOUGHBY was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.29    MICHAEL WHIDBEY and JANE DOE WHIDBEY constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, MICHAEL WHIDBEY was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the SEATTLE POLICE DEPARTMENT.

2.30    VERNER O'QUIN and JANE DOE O'QUIN constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, VERNER O'QUIN was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

2.31    SGT. JANDOC and JANE DOE JANDOC constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   Western District of Washington State.  Upon belief, SGT. JANDOC was at the time of the

2   injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE

3   acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE

4   DEPARTMENT.

5       2.32   OFFICER LANDERS and JANE DOE LANDERS constitute a marital community

6   under the laws of the State of Washington and upon belief reside within KING County within the

7   Western District of Washington State.  Upon belief, OFFICER LANDERS was at the time of the

8   injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE

9   acting within the scope of his duties as an OFFICER of the SEATTLE POLICE

10  DEPARTMENT.

11  

12      2.33   LOREN R. STREET and JANE DOE STREET constitute a marital community

13  under the laws of the State of Washington and upon belief reside within KING County within the

14  Western District of Washington State.  Upon belief, LOREN R. STREET was at the time of the

15  injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE

16  acting within the scope of his duties as an OFFICER of the SEATTLE POLICE

17  DEPARTMENT.

18      2.34   P.J. FOX and JANE DOE FOX constitute a marital community under the laws of

19  the State of Washington and upon belief reside within KING County within the Western District

20  of Washington State.  Upon belief, P.J. FOX was at the time of the injuries complained of in this

21  complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his

22  duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

23  

24  

25  COMPLAINT FOR DAMAGES –
   Page 21 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.35   THOMAS M. MOONEY and JANE DOE MOONEY constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, THOMAS M. MOONEY was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.36   K. ZEIGER and JANE DOE K. ZEIGER constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, K. ZEIGER was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.37   J.J. LEE and JANE DOE LEE constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, J.J. LEE was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.38   RIK K. HALL and JANE DOE HALL constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, RIK K. HALL was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

COMPLAINT FOR DAMAGES –
Page 22 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.39    M. LANZ and JANE DOE LANZ constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, M. LANZ was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.40    PATRICIA A. MACDONALD and JOHN DOE MACDONALD constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, PATRICIA A. MACDONALD was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of her duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.41    WALTER M. HAYDEN and JANE DOE HAYDEN constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, WALTER M. HAYDEN was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.42    MARK A. GRINSTEAD and JANE DOE GRINSTEAD constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, MARK A. GRINSTEAD was at the time of the injuries complained of in this complaint, an employee and/or agent of the

COMPLAINT FOR DAMAGES ~
Page 23 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE

2   POLICE DEPARTMENT.

3        2.43   TOMMIE M. MORAN and JANE DOE MORAN constitute a marital community

4   under the laws of the State of Washington and upon belief reside within KING County within the

5   Western District of Washington State.  Upon belief, TOMMIE M. MORAN was at the time of

6   the injuries complained of in this complaint, an employee and/or agent of the CITY OF

7   SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE

8   DEPARTMENT.

9

10       2.44   ADRAIN Z. DIAZ and JANE DOE DIAZ constitute a marital community under

11   the laws of the State of Washington and upon belief reside within KING County within the

12   Western District of Washington State.  Upon belief, ADIAN Z. DIAZ was at the time of the

13   injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE

14   acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE

15   DEPARTMENT.

16       2.45   CHAD L. MCLAUGHLIN and JANE DOE MCLAUGHLIN constitute a marital

17   community under the laws of the State of Washington and upon belief reside within KING

18   County within the Western District of Washington State.  Upon belief, CHAD L.

19   MCLAUGHLIN was at the time of the injuries complained of in this complaint, an employee

20   and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of

21   the SEATTLE POLICE DEPARTMENT.

22

23       2.46   BRAD CONWAY and JANE DOE CONWAY constitute a marital community

24   under the laws of the State of Washington and upon belief reside within KING County within the

25   COMPLAINT FOR DAMAGES –
     Page 24 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  Western District of Washington State.  Upon belief, BRAD CONWAY was at the time of the

2  injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE

3  acting within the scope of his duties as an OFFICER of the SEATTLE POLICE

4  DEPARTMENT.

5      2.47   MATTHEW BRADRICK and JANE DOE BRADRICK constitute a marital

6  community under the laws of the State of Washington and upon belief reside within KING

7  County within the Western District of Washington State.  Upon belief, MATTHEW BRADRICK

8  was at the time of the injuries complained of in this complaint, an employee and/or agent of the

9  CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE

10  POLICE DEPARTMENT.

11

12      2.48   DAVID FITZGERALD and JANE DOE FITZGERALD constitute a marital

13  community under the laws of the State of Washington and upon belief reside within KING

14  County within the Western District of Washington State.  Upon belief, DAVID FITZGERALD

15  was at the time of the injuries complained of in this complaint, an employee and/or agent of the

16  CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE

17  POLICE DEPARTMENT.

18      2.49   RANDALL A. JOKELA and JANE DOE JOKELA constitute a marital

19  community under the laws of the State of Washington and upon belief reside within KING

20  County within the Western District of Washington State.  Upon belief, RANDALL A. JOKELA

21  was at the time of the injuries complained of in this complaint, an employee and/or agent of the

22  CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE

23  POLICE DEPARTMENT.

24

25  COMPLAINT FOR DAMAGES –
   Page 25 of 75

2.50   GEORGE HISSUNG, JR. AND JANE DOE HISSUNG constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, GEORGE HISSUNG, JR. was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.51   JASON G. DRUMMOND AND JANE DOE DRUMMOND constitutes a marital community under the laws of the State of Washington and upon belief resides within KING County within the Western District of Washington State.  Upon belief, JASON G. DRUMMOND was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.52   JOHN A. DIAZ and JANE DOE DIAZ constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, JOHN A. DIAZ was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.53   OFFICER MCCRAE and JANE DOE MCCRAE constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, OFFICER MCCRAE was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle. WA 98117
(206) 957-9010; Fax (206) 957-9013

1   acting within the scope of his duties as an OFFICER of the SEATTLE POLICE

2   DEPARTMENT.

3       2.54   JAMES B. PATCHEN and JANE DOE PATCHEN constitute a marital

4   community under the laws of the State of Washington and upon belief reside within KING

5   County within the Western District of Washington State.  Upon belief, JAMES B. PATCHEN

6   was at the time of the injuries complained of in this complaint, an employee and/or agent of the

7   CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE

8   POLICE DEPARTMENT.

9       2.55   MICHAEL M. SUDDUTH and JANE DOE SUDDUTH constitute a marital

10   community under the laws of the State of Washington and upon belief reside within KING

11   County within the Western District of Washington State.  Upon belief, MICHAEL M.

12   SUDDUTH was at the time of the injuries complained of in this complaint, an employee and/or

13   agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the

14   SEATTLE POLICE DEPARTMENT.

15       2.56   WILLIE WILLIAMS and JANE DOE WILLIAMS constitute a marital

16   community under the laws of the State of Washington and upon belief reside within KING

17   County within the Western District of Washington State.  Upon belief, WILLIE WILLIAMS was

18   at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY

19   OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE

20   DEPARTMENT.

21       2.57   W. CRAVENS and JANE DOE CRAVENS constitute a marital community under

22   the laws of the State of Washington and upon belief reside within KING County within the

COMPLAINT FOR DAMAGES –
Page 27 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

Western District of Washington State.  Upon belief, W. CRAVENS was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.58    R. BOURNES and JANE DOE BOURNES constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, R. BOURNES was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as an OFFICER of the SEATTLE POLICE DEPARTMENT.

2.59    MARK L. WORSTMAN and JANE DOE WORSTMAN constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, MARK L. WORSTMAN was at the time of the injuries complained of in this complaint, an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT of the SEATTLE POLICE DEPARTMENT.

2.60    BILL GARDINER and JANE DOE GARDINER constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, BILL GARDINER was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a LIEUTENANT of the WASHINGTON STATE PATROL.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.61    MARK W. LAMOREAUX and JANE DOE LAMOREAUX constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, MARK W. LAMOREAUX was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a LIEUTENANT of the WASHINGTON STATE PATROL.

2.62    SHAWN BERRY and JANE DOE BERRY constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, SHAWN BERRY was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the WASHINGTON STATE PATROL.

2.63    JAMES A. CHROMEY and JANE DOE CHROMEY constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, JAMES A. CHROMEY was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a LIEUTENANT of the WASHINGTON STATE PATROL.

2.64    DAVID W. BOURLAND and JANE DOE BOURLAND constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, DAVID W. BOURLAND was at the time of the injuries complained of in this complaint, under a material aid agreement an

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a

2  TROOPER of the WASHINGTON STATE PATROL.

3      2.65   CURT G. BOYLE and JANE DOE BOYLE constitute a marital community under

4  the laws of the State of Washington and upon belief reside within KING County within the

5  Western District of Washington State.  Upon belief, CURT G. BOYLE was at the time of the

6  injuries complained of in this complaint, under a material aid agreement an employee and/or

7  agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the

8  WASHINGTON STATE PATROL.

9

10     2.66   RICARDO BRITO and JANE DOE BRITO constitute a marital community under

11 the laws of the State of Washington and upon belief reside within KING County within the

12 Western District of Washington State.  Upon belief, RICARDO BRITO was at the time of the

13 injuries complained of in this complaint, under a material aid agreement an employee and/or

14 agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the

15 WASHINGTON STATE PATROL.

16     2.67   DARIN F. DE RUWE and JANE DOE DE RUWE constitute a marital community

17 under the laws of the State of Washington and upon belief reside within KING County within the

18 Western District of Washington State.  Upon belief, DARIN F. DE RUWE was at the time of the

19 injuries complained of in this complaint, under a material aid agreement an employee and/or

20 agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the

21 WASHINGTON STATE PATROL.

22

23     2.68   BRYAN R. DUCOMMUN and JANE DOE DUCOMMUN constitute a marital

24 community under the laws of the State of Washington and upon belief reside within KING

25

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

County within the Western District of Washington State. Upon belief, BRYAN R. DUCOMMUN was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the WASHINGTON STATE PATROL.

2.69    ANN E. DUTTON and JOHN DOE DUTTON constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, ANN E. DUTTON was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of her duties as a DETECTIVE of the WASHINGTON STATE PATROL.

2.70    KEVIN L. FORRESTER and JANE DOE FORRESTER constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, KEVIN L. FORRESTER was, at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the WASHINGTON STATE PATROL.

2.71    JOEL W. GORDON and JANE DOE GORDON constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State. Upon belief, JOEL W. GORDON was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the WASHINGTON STATE PATROL.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    2.72    CHRIS T. GUNDERMANN and JANE DOE GUNDERMANN constitute a

2   marital community under the laws of the State of Washington and upon belief reside within

3   KING County within the Western District of Washington State.  Upon belief, CHRIS T.

4   GUNDERMANN was at the time of the injuries complained of in this complaint, under a

5   material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the

6   scope of his duties as a SERGEANT of the WASHINGTON STATE PATROL.

7    2.73    JOI J. HANER and JOHN DOE HANER constitute a marital community under

8   the laws of the State of Washington and upon belief reside within KING County within the

9   Western District of Washington State.  Upon belief, JOI J. HANER was at the time of the injuries

10

11   complained of in this complaint, under a material aid agreement an employee and/or agent of the

12   CITY OF SEATTLE acting within the scope of her duties as a TROOPER of the

13   WASHINGTON STATE PATROL.

14    2.74    ROGER D. HANSBERRY and JANE DOE HANSBERRY constitute a marital

15   community under the laws of the State of Washington and upon belief reside within KING

16   County within the Western District of Washington State.  Upon belief, ROGER D.

17   HANSBERRY was at the time of the injuries complained of in this complaint, under a material

18   aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of

19   his duties as a TROOPER of the WASHINGTON STATE PATROL.

20    2.75    RUSSELL J. HANSON and JANE DOE HANSON constitute a marital

21   community under the laws of the State of Washington and upon belief reside within KING

22   County within the Western District of Washington State.  Upon belief, RUSSELL J. HANSON

23

24   was at the time of the injuries complained of in this complaint, under a material aid agreement an

25   COMPLAINT FOR DAMAGES –
     Page 32 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the WASHINGTON STATE PATROL.

2.76    JEFFREY R. KERSHAW and JANE DOE KERSHAW constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, JEFFREY R. KERSHAW was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the WASHINGTON STATE PATROL.

2.77    DANIEL L. MANN and JANE DOE MANN constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, DANIEL L. MANN was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the WASHINGTON STATE PATROL.

2.79    GEORGE R. MARS and JANE DOE MARS constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, GEORGE R. MARS was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the WASHINGTON STATE PATROL.

2.80    JOHN G. MCMULLEN and JANE DOE MCMULLEN constitute a marital community under the laws of the State of Washington and upon belief reside within KING

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

County within the Western District of Washington State.  Upon belief, JOHN G. MCMULLEN was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the WASHINGTON STATE PATROL.

2.81   DARRELL R. NOYES and JANE DOE NOYES constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, DARRELL R. NOYES was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the WASHINGTON STATE PATROL.

2.82   STEVEN E. REEVES and JANE DOE REEVES constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, STEVEN E. REEVES was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a TROOPER of the WASHINGTON STATE PATROL.

2.83   WESLEY H. RETHWILL and JANE DOE RETHWILL constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, WESLEY H. RETHWILL was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT of the WASHINGTON STATE PATROL.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.84    CRAIG L. SAHLINGER and JANE DOE SAHLINGER constitute a marital

community under the laws of the State of Washington and upon belief reside within KING

County within the Western District of Washington State.  Upon belief, CRAIG L. SAHLINGER

was at the time of the injuries complained of in this complaint, under a material aid agreement an

employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a

TROOPER of the WASHINGTON STATE PATROL.

2.85    DAVID J. BROWNE and JANE DOE BROWNE constitute a marital community

under the laws of the State of Washington and upon belief reside within KING County within the

Western District of Washington State.  Upon belief, DAVID J. BROWNE was at the time of the

injuries complained of in this complaint, under a material aid agreement an employee and/or

agent of the CITY OF SEATTLE acting within the scope of his duties as a SERGEANT of the

WASHINGTON STATE PATROL.

2.86    GARY D. GASSELING and JANE DOE GASSELING constitute a marital

community under the laws of the State of Washington and upon belief reside within KING

County within the Western District of Washington State.  Upon belief, GARY D. GASSELING

was at the time of the injuries complained of in this complaint, under a material aid agreement an

employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a

SERGEANT of the WASHINGTON STATE PATROL.

2.87  PAUL M. STANEK III and JANE DOE STANEK constitute a marital community

under the laws of the State of Washington and upon belief reside within KING County within the

Western District of Washington State.  Upon belief, PAUL M. STANEK III was at the time of

the injuries complained of in this complaint, under a material aid agreement an employee and/or

COMPLAINT FOR DAMAGES –
Page 35 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the

2  WASHINGTON STATE PATROL.

3      2.88  RICHARD A. TAYLOR and JANE DOE TAYLOR constitute a marital community

4  under the laws of the State of Washington and upon belief reside within KING County within the

5  Western District of Washington State.  Upon belief, RICHARD A. TAYLOR was at the time of

6  the injuries complained of in this complaint, under a material aid agreement an employee and/or

7  agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the

8  WASHINGTON STATE PATROL.

9

10     2.89  GARY M. WILCOX and JANE DOE WILCOX constitute a marital community

11 under the laws of the State of Washington and upon belief reside within KING County within the

12 Western District of Washington State.  Upon belief, GARY M. WILCOX was at the time of the

13 injuries complained of in this complaint, under a material aid agreement an employee and/or

14 agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the

15 WASHINGTON STATE PATROL.

16     2.90  OREST D. WILSON and JANE DOE WILSON constitute a marital community

17 under the laws of the State of Washington and upon belief reside within KING County within the

18 Western District of Washington State.  Upon belief, OREST D. WILSON was at the time of the

19 injuries complained of in this complaint, under a material aid agreement an employee and/or

20 agent of the CITY OF SEATTLE acting within the scope of his duties as a DETECTIVE of the

21 WASHINGTON STATE PATROL.

22

23     2.91  RONALD W. SERPAS and JANE DOE SERPAS constitute a marital community

24 under the laws of the State of Washington and upon belief reside within KING County within the

25 

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

Western District of Washington State.  Upon belief, RONALD W. SERPAS was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as the CHIEF of the WASHINGTON STATE PATROL.

2.92  DANIEL E. EIKEM and JANE DOE EIKEM constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, DANIEL E. EIKEM was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a CAPTAIN of the WASHINGTON STATE PATROL.

2.93  STEVEN D. MCCULLEY and JANE DOE MCCULLEY constitute a marital community under the laws of the State of Washington and upon belief reside within KING County within the Western District of Washington State.  Upon belief, STEVEN D. MCCULLEY was at the time of the injuries complained of in this complaint, under a material aid agreement an employee and/or agent of the CITY OF SEATTLE acting within the scope of his duties as a LIEUTENANT of the WASHINGTON STATE PATROL.

2.94  There are numerous other persons, identities presently unknown to Plaintiffs who are, and were at all times mentioned herein, supervisors, incident commanders, and decision-makers OF THE CITY OF SEATTLE, and the SEATTLE POLICE DEPARTMENT and/or the other involved agencies, who acted in concert with the above named Defendants and who devised or approved the police strategy for responding to the demonstration and police response

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

thereto that are the subject of this action and in doing the things hereinafter alleged, acted under color of state law as agents of the CITY OF SEATTLE and with its full consent and approval.

2.95. There are also numerous Does, who are employees and/or Managers or agents of Defendant LEIU who were directly involved in planning, organizing, and orchestrating the response to the demonstration in question, including to Plaintiffs, and are responsible for the harm suffered by Plaintiffs.

2.96. DOES 1-250 are, and were at all times mentioned herein, OFFICERS, Supervisors, and the Incident Commander For This Demonstration Of The Police Department Of The CITY OF SEATTLE, Or Other CITY, other Public Agency or Private Actors or Officials involved in the planning, creation, development or exercise of Police Force and Control against the demonstration in question, the response to which is the subject of this action, and in committing the acts and omissions herein alleged hereinafter alleged, acted under color of state law as agents of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT and with its full consent and approval.

2.97    This action is brought pursuant to the First, Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, Article 1, Section 5 and Article 1, Section 7 of the Washington State Constitution, 42 U.S.C. 1983, 1988, Revised Code of Washington Title 9, Chapter 62, Section 10(1), Washington State common law prohibiting assault, battery, intentional infliction of emotional distress, false arrest and false imprisonment, and Washington common law negligence.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

2.98.  Captain SANFORD was himself at the scene, involved in the decision-making and active in creating the Constitutional and other legal violations that occurred and that are the subject of this action.

2.99    Between September 19 and September 25, 2003, Plaintiffs served Defendant CITY OF SEATTLE with Notices of Claim, which were acknowledged by King County shortly thereafter.  Substantially more than 60 days has gone by since the service of those claims without an acceptance or rejection.  Therefore Plaintiffs have fulfilled their obligations under the statute.

## III. FACTS

a.) Overall

3.1    Plaintiffs were legal observers to a permitted, peaceful, and lawful demonstration against the Law Enforcement Intelligence Unit (LEIU.) This demonstration was permitted by the city and the police.

b.) Background

3.2 The Law Enforcement Intelligence Unit (LEIU) is a theoretically private non-profit organization, made up entirely of public law enforcement agencies and their employees.  The LEIU came into prominence after the scandals surrounding illegal surveillance, disruption and infiltration of legal protest groups by law enforcement agencies in the 1960's and 1970's.  Such illegal activity by law enforcement prompted the investigations of Senator Church's Committee, and led to legal limits being placed on the ability of law enforcement to collect data and target citizens engaged in lawful dissent in this matter.  As it became illegal for the federal government to perform these functions, they did not cease, but became absorbed by private and non-profit

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

organizations. The LEIU was one of these organizations that continued to collect data on lawful protesters for the benefit of law enforcement. It even became the depository of many files created by law enforcement agencies that could no longer retain their old files.

The LEIU picked Seattle as the site of their annual convention for 2003. The event was scheduled for June. Several citizens and community organizers in Seattle became aware that the LEIU was coming by February of 2003. They began holding meetings to peacefully protest the convention.

The organizers of the demonstrations against the LEIU pledged immediately to make the event family-friendly and non-violent. They adopted a code of non-violence and made it a condition for those who would be attending the rally. This was reflected in subsequent meetings and in the literature distributed by this group.

The setup and logistics of the protest involved many of the same players that had put on many large peace marches in the proceeding years. One of the main sponsors of this protest was the Not In Our Name Coalition that had put together the first large Seattle rally around the Iraq war, which had numbered in the tens of thousands. Some of the main organizers had decades of experience organizing these types of events. The group included police liaisons who had worked with police on dozens of rallies before. They included peacekeepers, trained to defuse any potential conflict and keep marches peaceful. They included medics who were trained to treat injuries that occurred during protest. They included Legal Observers from both the National Lawyers Guild and the ACLU, who were trained to observe what occurred and make an independent record. They included videographers, photographers and other independent media

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  producers. All of these groups and individuals had participated in these large peace rallies with

2  numbers in the tens of thousands, and few, if any, incidents of arrest.

3  Even from the first meeting, there were strong indications that the protesters were being

4  watched. Participants at the first meeting noticed a man in attendance. This man was unfamiliar

5  to any of them, and took copiously detailed notes throughout the meeting. At the meetings end

6  he was observed going into what appeared to be an unmarked police car.

7  As the meetings progressed and the June meeting date grew closer, harassment became

8  steeper. Organizers noticed themselves being followed, near homes, at work and as they drove.

9  Organizers went forward and negotiated the permit for the march with the Seattle Police

10  Department, and the permit for the rally at Westlake Plaza with the City of Seattle. They

11  negotiated with the Seattle Police for the march permit approximately one week before the event.

12  They spoke with Lt. Poulsen and Captain Mike Sanford. There was no time limit on the permit

13  for the march.

14  In late May and early June, organizers held teach-ins about the LEIU. This included a

15  session at Town Hall, led by researchers on the LEIU and allied organizations. Several hundred

16  attended this event on the evening of June 1, 2003.

17  Day of the Event

18  On June 2nd, some of the organizers were scheduled to meet at 10 AM in the morning

19  with their attorney, William Broberg, and Virginia Swanson from the City of Seattle, to make

20  final arrangements for the permit.

21

22

23

24

25  COMPLAINT FOR DAMAGES –
   Page 41 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

On the way to this meeting some of them drove past the Red Lion Inn in downtown Seattle. There was already a heavy police presence there. Large numbers of police remained there, in riot gear, the whole day.

The meeting for the permit took place at Westlake Plaza in Seattle at 10AM as scheduled. The organizers were granted access to the space from Noon until 10 PM. They held a press conference at Westlake Plaza around mid-day. Reporters from most media outlets were present.

Some of the organizers returned to Westlake around 3PM, to set up, to be on site to observe the arrangements with police, as well as to make sure that the arrangements made with Ms. Swanson were complied with. Also around this time people began to arrive for the demonstration in small groups of 2s and 3s.

At or around 4 PM, police on bicycles arrived. They were patrolling the area. Between 5 and 6 PM, Captain Sanford and several of his aides walked through.

By about 5:30 PM there were fairly significant numbers of demonstrators in Westlake Plaza.

The five legal observers for the National Lawyers Guild who had volunteered to monitor and observe this demonstration arrived during this time period. All legal observers wore bright lime green t-shirts that read "NATIONAL LAWYERS GUILD LEGAL OBSERVER" across them in large black block letters, with matching lime green baseball hats. They were readily identifiable from a great distance, and are clearly visible on video throughout the incident. There were also legal observers from the ACLU wearing similar prominent attire in blue, one of whom was also seriously injured by the police.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    The role of Legal observers, who have all received extensive training, is to document

2   police activity and any incidents that occur; to give limited legal advice, if they are attorneys;

3   and in rare circumstances, to inform the police that they are violating the law. Legal observers

4   who are attorneys are also available, if there are arrests, to go to the jail, ascertain the status of

5   arrestees, and to visit and/or advise them in jail if appropriate. A substantial percentage of

6   National Lawyers Guild Legal Observers are attorneys, most of the rest are law students or legal

7   workers. They are not participants in the demonstration they are covering and do not interfere

8   with police operations or activities.

9

10    The rally started at 6 PM as scheduled, and proceeded as planned - peaceful and without

11   incident. The Rally featured speakers that included victims of political surveillance, as well as

12   representatives of the ACLU and the National Lawyers Guild. There were several hundred

13   people in attendance. Some of the demonstrators performed street theater skits. Some carried

14   colorful signs, such as a copy of the Bill of Rights with the word "Void" stamped across it. The

15   atmosphere was festive. There was no hint of violence from any of the protesters. Everything

16   was calm and peaceful.

17    During the course of the rally, LEIU conference attendees mingled with the crowd,

18   videotaping demonstrators, asking some of them questions about where they were from, and who

19   they were with, singling out at least one demonstrator who was visiting from out of town, and

20   making clear they knew who he was, and generally conducting surveillance of the

21   demonstration. Many of these individuals wore clothing identifying what law enforcement

22   organization they were with, including two men wearing clothing identifying them as officers of

23

24

25   COMPLAINT FOR DAMAGES –
     Page 43 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   the "St. Louis Housing Police Department, which had just conducted raids on offices of a group

2   engaging in a protest against a conference in St. Louis."

3       At about 7PM, the march took off as the organizers had planned with the Seattle police.

4   Westlake Plaza was located on Fourth Avenue between Pine and Pike Street. The Red Lion Inn

5   was located one block south between Pike and Union, with entrances on Fourth and Fifth

6   Avenue, its main entrance being at 1415 Fifth Avenue. The organizers' plan was to march to the

7   Red Lion Inn, one block South of Westlake Plaza, and ultimately to march around the block.

8   They planned to pause in front of the Fifth Avenue entrance.

9

10       The large peace rallies, organized by many of these same people had been characterized

11   by a token police presence. Marches with tens of thousands had been escorted through many

12   miles of Seattle without incident by a few dozen police. Despite the fact that the same organizers

13   were in charge of this event's logistics, an arbitrary decision was made to use a more heavy

14   handed approach. Despite the fact that this was a march with probably less than a thousand

15   people that was only going a few blocks, there were far more police present than there had been

16   at the marches and rallies that ran for miles and included tens of thousands of demonstrators.

17

18   Police Presence and Weaponry on June 2, 2005

19

20       All along the route few blocks to Red Lion Inn, almost every street or alley was blocked

21   by lines of police in full riot gear.

22       The police already had barriers set up when the few hundred demonstrators arrived.

23   There were barriers on Fifth Avenue and Fourth Avenue. The police had the alley between the

24   two streets blocked off with metal barricades and squad cars.

25   

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    Whereas the police in the prior larger rallies had worn what they referred to as their

2  "soft" uniforms, many wore the "hard" uniforms consisting of full body armor.  These

3  uniforms made the police look more threatening and covered their faces.

4    The SPD had already acknowledged that these uniforms often created more problems

5  than they solved.  For example, they had stated they could not intervene during the Mardi Gras

6  beatings that had taken place in 2001, because their officers wore these same uniforms.  The

7  SPD command had felt that intervention by the officers wearing these uniforms would likely

8  incite a crowd of people.

9    A line of officers, including many from the Washington State Patrol, formed a line

10  several officers deep in front of the Fifth Avenue entrance of the Red Lion Inn.  In defiance of

11  the local Seattle Ordinance, many of them wore no name tags.  Almost all of these officers wore

12  the same body armor that made the police reluctant to take any action during the Mardi Gras

13  event for fear of exacerbating an already bad situation.  Most of the officers carried some type of

14  "less-lethal weaponry."  Sometimes incorrectly referred to as "non-lethal weaponry," this

15  weaponry is designed to be used in a potentially life threatening situation, as an alternative to

16  firearms or other methods more likely to kill.  "Less-lethal weaponry" is designed to be used in

17  very narrow parameters so that it may have a lower likelihood of killing someone.  Police

18  training materials and that of the manufacturers themselves, stresses that there is always the

19  likelihood that these weapons can kill even when used within the recommended narrow

20  parameters, and thus should be considered a lethal use of force, not something equivalent to a

21  verbal command.

COMPLAINT FOR DAMAGES –
Page 45 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    Despite the lethality of these weapons, and despite the fact that training materials stress

2    their lethality, their literature, notably including much of the companies' sales literature, refers to

3    these weapons as "non-lethal" and gives false indications some implied some overt, that these

4    weapons do not kill, and are always safe to use.

5    Many of the officers present that day carried either 37mm, 38mm, 40mm and or similar

6    caliber launchers. Some of these were single shot, others were configured like enormous

7    revolvers and held five or six shots, or even as many as eight shots. These held cartridges,

8    approximately 8 inches or 250 mm long and 1 ½ inches or 37mm wide. These cartridges could

9    be filled with a variety of weaponry described below.    At least two officers in front of the Fifth

10   Avenue entrance to the Red Lion Inn carried these.

11

12   Many of the officers carried 12 gauge shot guns. These were pump action, or guns that

13   required spent shells to be manually ejected, as the less lethal cartridges had insufficient charge

14   to cycle the next cartridge. The cartridges they fired were the size of normal shotgun shells, and

15   were similar to the cartridges in the launchers, though much smaller. At least two of the officers

16   in front of the Fifth Avenue entrance of the Red Lion Inn carried these.

17   The cartridges in the shotguns and larger launcher could contain "impact" projectiles,

18   chemical agents or a combination of these. The "impact" projectiles included "flying batons"

19   which were large pieces of heavy plastic usually several inches long and the width of the

20   cartridges, wooden "dowels" which were cylinders of wood the width of the cartridges, "bean

21   bags" which consisted of buck shot sewn in a bag, and "rubber ball rounds" of varying sizes and

22

23   densities.

24

25   COMPLAINT FOR DAMAGES –
     Page 46 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

One of the factors that made these cartridges less likely to kill people was that they had a lower velocity than bullets. A "rubber ball round "given the same charge as a bullet the same size would travel faster and thus be more lethal. Most of the "impact projectiles" only slowed to a safe distance once they'd traveled a substantial number of feet from the firearm. This meant that they were highly lethal if fired in close range.

Another factor that made these cartridges less likely to kill people was that they were designed to only be fired at limited areas of the body. These areas were "the meaty areas," and consisted only of the thighs and buttocks. A large piece of hard plastic, a piece of wood 38mm in diameter, a "rubber ball round" the size of a marble or ball bearing, a bag of buckshot, traveling in speeds in excess of 300 feet per second as most of these did, all could easily be lethal if they struck the head, if they struck the kidneys, or penetrated the eyes.

Another factor that made these firearms less likely to kill someone was that many of these were designed to be "skip-fired," or shot into the ground so that they lost velocity and then ricocheted into the appropriate area of the specific target.

This combination of factors, and other similar factors made the impact cartridges of devices of limited utility in large crowd control situations. The prospect that these impact projectiles could be fired at a specific person, strike a specific area of their body, from a certain distance, after being skip fired off the ground, made little sense in a situation where there were a dozen people moving around, let alone a few hundred. It would be very easy to hit an innocent person. It would be very easy to strike the wrong part of the body. It would be very easy to cause a major injury or fatality. For this reason many law enforcement agencies have limited their use, or even banned it as regards crowd control situations.

COMPLAINT FOR DAMAGES –
Page 47 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

Many of the cartridges contained the chemical agent OC.

OC is also known as oleoresin capsicum, cap-stun or pepper spray. OC is made from an extract of cayenne peppers. OC is a neurotoxin that causes the production of Compound P, a neurotransmitter involved in sensing of pain. It gained popularity because it not merely incapacitated subjects, but caused involuntary physical reactions. It has been linked to many dozens of in-custody deaths.

This chemical agent was designed to cause pain and disorientation, confusion and fear. Typically a container carrying the chemical agent would strike an area and disperse, effecting people in its vicinity.

Many of the cartridges contained "distraction devices," such as smoke devices and explosion devices that were designed to create disorientation, confusion and fear.

Many of the cartridges contained combinations of the above impact devices, and/or chemical agents, and or "distraction devices."

Many of the officers carried "pepperball" and or similar style guns. These were guns similar to those used in paintball. They fired pellets similar in size and consistency to those used in paintball. The pellets fired from these guns were not filled with paint; instead they were filled with OC, or similar agents. The pellet would explode upon contact and disperse the OC, or similar agents. These were a similar type of weapon to the one that had killed Victoria Snelgrove, an Emerson College student struck in the eye by a "less-lethal" projectile in October 2004, during a celebration after the Boston Red Sox defeated the New York Yankees in the American League Championship Series. These were only supposed to be fired on limited parts of the body, and in highly controlled circumstances.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   Many of the officers carried "Sting-Ball" and similar style rubber ball grenades. These

2   were made of a hard rubber substance, and released hard plastic balls the size of ball bearings

3   when they exploded.

4   Many of the officers carried grenades similar in style to the rubber ball grenades except

5   that they also contained OC or similar substances. When these exploded, they not only released

6   hard plastic balls, but the chemical agents as well.

7   Because of the way a grenade explodes, it would be impossible for any officer throwing

8   these to know exactly who their projectiles would hit, in what part of the body and with how

9   much force. Any use of these could potentially cause permanent injury or death. Additionally,

10   when deployed in a crowded situation such devices have been found to cause additional injuries

11   as crowds panic and attempt to flee the area.

12

13   Many of the officers carried flash bang and stun grenades. These were designed as

14   "distraction devices" that would cause loud noises, make bright flashes, and release smoke, OC,

15   CS, CN or a combination of these and or similar substances. These would cause fear, confusion,

16   and disorientation. While appropriate in some situations such as executing a forced entry on an

17   armed and dangerous suspect, such devices routinely cause panic in crowds, causing people to

18   trample each other, and creating similar injuries.

19   Most if not all of the officers carried OC dispensers. Some were hand held. Others were

20   as large as fire extinguishers. All had limits on the distance from which they could be fired, as

21   firing from a close distance could cause chemical burns and other injuries. All had limits in the

22   length of time they could be fired as the likelihood of permanent damage to an individual

23

24

25   COMPLAINT FOR DAMAGES –
Page 49 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   increased with the amount of substance a person was exposed to. All were designed to be used

2   in areas where there was a free flow of air.

3       At least one of thee officers carried a variant of the AR-15/M-16 military rifle. These

4   fired highly lethal .223 caliber ammunition that traveled at a rate of 3,000 feet per second. This is

5   the standard weapon used by the United States military.

6   The Demonstration in Front of the Red Lion Inn: Early Arrests

7       By about 7:15 PM, the bicycle police had formed a line, on the northern side of the Red

8   Lion Inn on Fifth Avenue. Behind them were about a half dozen officers on horses. Because of

9   the metal barricades on the east and west sides of the street, the demonstrators were penned in.

10  Arbitrarily, the police allowed certain other people through these same lines, while blocking

11  people they believed were associated with permitted demonstration. Some of the demonstrators

12  asked the police which way they should go if they wanted to leave, but were met with silence by

13  these same police.   Similarly, demonstrators who were attempting to get into the rally from the

14  same area were blocked. After a few minutes, Peacekeepers formed a line between these police

15  and the other demonstrators.

16      On the west side of the Red Lion Inn, along 4th Avenue, a smaller group of demonstrators

17  were gathered. Police singled several of these people for particularly brutal arrests, stepping on

18  one of the arrestees' head. Also arrested was a media person attempting to videotape the arrest.

19      On the eastside along Fifth Avenue, the demonstration continued without incident.

20  People held signs, chanted slogans. A marching band played. Some people danced. The

21  demonstrators remained peaceful. None of them destroyed any property. None of them broke

22

23

24

25  COMPLAINT FOR DAMAGES –
    Page 50 of 75

any windows. None of them threw any objects at the police. Police were able to pass through the demonstrators without incident.

A mixture of shoppers and other people moving through the downtown area walked through the demonstration, or stood by and watched it without incident.

Many of the LEIU conference participants were at windows and balconies, watching the demonstration below. Some of them took photographs or shot videos of the demonstration.

Somewhere in this time period, the police blocked off the demonstration at 5th and Pike, and refused to allow any demonstrators, or anyone who appeared to the police to be associated with the demonstration, to leave. Police soon did the same at 5th and Union at the far end of that block, blocking off every means of egress, except for West to 4th Avenue.

At about 7:20 PM, a young man climbed onto a Plexiglas awning, north of the Red Lion Inn on Fifth Avenue. He seemed to be largely ignored by the police and most of the demonstrators.

At about 7:45, Robert Barnes, one of the police liaisons, asked Captain Sanford if the demonstrators would be permitted to circle the building several times, and then return to Westlake. Captain Sanford replied no, but assured, "your people will be cold and hungry before we force you off the street."

One of the other organizers, Roger Weaver, announced this to the demonstrators on Fifth Avenue over an amplified bull horn. Weaver complimented the police, and reiterated that the demonstrators could stay there till they were cold. It was 7:50 PM.

Sometime after this, Captain Sanford seemed to notice the young man on the awning, as he attempted, without success, to burn a flag. While the majority of the demonstrators listened to

COMPLAINT FOR DAMAGES –
Page 51 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

an organizer from the Not In Our Name (NION) coalition tell them how they would be proceeding back to Westlake Plaza, Sanford stood north of the group, under the Plexiglas awning, staring up at the young man and talking into his cell phone.

Several of the other demonstrators voiced concern to the NION organizer. She replied "the police are starting to line up. That's their message to us." It was about 8:07 PM

The Attacks on the Demonstrators by Police

Captain Sanford left the area under the awning and began to talk to each of his command staff. He walked through the area around the demonstrators talking to first one of the bicycle officers, then the others, including Lt. Wilske. Without exception, the demonstrators stepped aside as Sanford moved forward. Sanford and the other officers were able to move through the demonstrators without incident.

As Sanford made plans on how to deal with the young man on the awning the majority of the demonstrators remained oblivious to this. Most in front of the Red Lion Inn were gathered around a band playing "Down by the Riverside."

The bicycle officers lined up along the north end of the demonstrators, in formation to ride into the demonstration as a group. The demonstrators continued to listen to, dance or play with the band.

At about 8:12 PM the young man on the awning attempted to light a flag on fire, this attracted the attention of a few dozen of the demonstrators.

At about 8:20 PM , the bicycle police moved in formation to the East End of Fifth Avenue, North of the awning.

ISAK BRESSLER
Attorney at Law
6750 15ᵗʰ Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    At about 8:23 PM, forty minutes after Captain Sanford's statement that the demonstrators

2   could stay till they were "cold and hungry," Robert Barnes, as police liaison approached Captain

3   Sanford and Lieutenant Wilske, who were standing on East side of Fifth Avenue, on the

4   sidewalk, next to the bicycle police.  Barnes, the liaison suggested that if the police could

5   guarantee they would not arrest the person on the awning, he could get the crowd to disperse to

6   Westlake.

7    Captain Sanford told him, "no, that's not going to happen.  You have two minutes to

8   disperse."

9

10    No other warning was given by the police to the crowd.  The police did not make an

11   announcement over a public address system or make any attempt to communicate to the crowd to

12   leave the area.  Some of the other organizers began to direct the demonstrators back towards

13   Westlake Plaza.

14    Barnes, the liaison to the police, immediately asked what had changed in the last 40

15   minutes.  Captain Sanford made no reply.

16    As organizers began directing the demonstrators to Westlake, the demonstrators complied

17   and began to move south, the only direction still open to them, and away from the awning, down

18   Fifth Avenue.  The Peacekeepers formed a line on the North end between the police and the

19   demonstrators.

20

21    The young man on the awning came down and attempted to join the departing

22   demonstrators.

23    As the group then proceeded back to Westlake, someone, presumably this young man,

24   was grabbed out of the group by several undercover officers.  They moved him roughly to the

25   COMPLAINT FOR DAMAGES –
Page 53 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  line of police in riot gear in front of the Red Lion Inn along Fifth Avenue. The young man was

2  tossed over the railing, by a mixture of uniformed and plainclothes police.

3      None of the demonstrators attempted to go over the metal barriers. The only people who

4  attempted to go over the metal barriers were the undercover officers, dressed in street clothes.

5  These undercover officers, including Defendants LOWE and ROMERO, charged the police

6  barricade. Defendant ROMERO attempted to start fights with demonstrators in the crowd. No

7  demonstrator attempted to breach the police barricade; the closest of the demonstrators were

8  several feet from the barricades.

9

10     Captain Sanford stated at a press conference later that evening that he was telling the

11 demonstrators to give the police two feet of working room and that by and large they complied.

12     As the young man was tossed over the metal barricade, many of the officers

13 indiscriminately fired their containers of OC into the crowd. The chemical agents struck and

14 drenched large numbers of people, including those demonstrators already leaving for Westlake

15 Plaza and the undercover officers themselves. Several of the plaintiffs were hit at this time.

16     As the young man was tossed over the railing, police on bicycles rode into the crowd,

17 using their bicycles to batter the crowd. Some demonstrators were injured and bleeding as they

18 were hit by the bicycles. Some were injured and bleeding as the police got off their bicycles and

19 swung them like clubs, striking those demonstrators around them. Among those targeted were

20 the legal observers, including Plaintiff WEILL, who was struck in the back of the leg with a

21

22 bicycle wielded by one of the bicycle squad officers and received severe lacerations and

23 contusions to her leg, which bled significantly and was sore for many weeks afterwards. One of

24

25

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1  the bicycle commanders realized they were being videotaped, pointed toward the camera and

2  shouted the words "Hey! Movie!" to the other officers.  These officers relaxed their attack.

3  Also at this time, other less lethal weaponry was fired into the crowd of demonstrators.

4      Throughout this time period, only one of the demonstrators appears to have thrown a

5  flimsy cardboard sign at the police line, which landed at their feet without effect.

6      The bicycle officers formed a second line in front of the metal barrier.  Several held their

7  canisters filled with OC.  There was some yelling by the demonstrators, but in no way did they

8  attack the police.

9      It was around this time that several dozen more police in riot gear joined the others.

10  These held weapons that included launchers, shotguns pepper-ball guns OC Canisters, batons,

11  and at least one AR-15/M-16 variant.

12      The police advanced using their bicycles as barriers, pushed the demonstrators forward.

13  Around this time the only physical confrontation by demonstrators came when someone threw a

14  rubber traffic cone on the direction of the police.

15      Just behind the metal barriers, at least five large police officers had the young man

16  presumed to have been on the awning on the ground, with a weapon at his head, severely beating

17  him, and pepper spraying him directly in the face at point blank range.

18      During this time no aid was offered by the police to any of the people, be they

19  demonstrators, media, legal observers or bystanders, who had been injured by the chemical

20  agents, less lethal weapons, or blows of the police.

COMPLAINT FOR DAMAGES –
Page 55 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1      Some of the medics' supplies were now stuck behind police lines. The police made no

2   response to requests by medics and organizers that they be allowed to retrieve them. This

3   hindered the ability of many of the injured to receive care.

4      Organizers again started to move the crowd forward. There was some yelling, at the

5   police but the protesters again started to head out through their only exit, going South on Fifth

6   Avenue.

7      In response, at least three of the police began spraying all the demonstrators in their

8   proximity with chemical agents. Dozens of the demonstrators were directly hit by these agents.

9   This was followed by the police surging forward with their bicycles, striking into the crowd,

10   hitting demonstrators with considerable force. It was now around 8:28 PM.

11

12      At this point, about two dozen or so protesters were facing the police. Also, there were

13   members of the media, legal observers and passersby who'd been drawn to the activity. After a

14   brief pause, the police again pushed forward with their bicycles. Several officers on the East side

15   of the street sprayed a few dozen people with OC and or similar agents. Several people were

16   grabbed and arrested. It was now about 8:32 PM.

17      With dozens of the demonstrators and some bystanders debilitated by the pepper spray

18   and other less lethal devices, many of them had to be helped as they hobbled away. The police

19   continued to push forward, striking people with their bicycles and batons, including Plaintiff

20   Wes Hamilton, who was struck repeatedly without cause or justification. By about 8:39 PM, the

21   police were pushing the demonstrators down Union Street, from Fifth to Fourth Avenue. Some

22   of the demonstrators chanted, "this is what a police state looks like."

23

24

25   COMPLAINT FOR DAMAGES –
     Page 56 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    In front of the Washington Mutual Bank, on the NW Corner of Union and Fifth Avenue

2  the police grabbed several of the demonstrators. Several officers yanked them back behind lines

3  as others sprayed those in their vicinity with chemical agents. Several photographers attempting

4  to photograph this were knocked to the ground, or themselves arrested. Many of those present

5  were stumbling blindly from the OC and other agents. No aid was offered by any of the police to

6  any of these people, nor did police direct anyone where to disperse to. Several of the medics

7  who were attempting to administer aid were themselves attacked by the police.

8    The police and protesters turned North on Fourth Avenue, again, the only route that was

9

10  not blocked off. The other side of the Red Lion Inn was on this street. Those attending the

11  LEIU Conference watched from the windows, some with cameras.

12    As the group turned North on Fourth Avenue, and came back in sight of the Red Lion

13  Inn, the police's use of Less Lethal Agents again accelerated. In front of the Office Depot Store,

14  on the West side of the street, across from the Red Lion Inn, the police again let fly with

15  generous bursts of OC aimed over the retreating demonstrators. Several people were grabbed by

16  the police and wrestled to the ground.

17    Within about five seconds of the bursts of OC or other chemical agents, several other

18  types of less lethal devices were used. There were at least four loud explosions of concussion

19  grenades thrown by the police. Clouds of chemical agents appeared in front of the

20  demonstrators. With the police moving forward, the demonstrators, media, and those who had

21  been swept into their path were forced to walk into and through these chemical agents. A few of

22  the protesters shouted, "Walk, don't panic." As if in response, at least three more explosions

23  soon followed. All seven explosions had taken place within the block in front of the Red Lion

24

25

COMPLAINT FOR DAMAGES –
Page 57 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

Inn. All had been fired into or over the back of a retreating crowd which was at least 30 to 50 feet away from the police lines, and obscured by smoke and OC powder. All seven explosions had taken place in slightly more than thirty seconds.

In the midst of this chaotic scene, police fired "rubber balls" and "wooden dowels" at the already retreating protesters. Some of the grenades were thrown directly at the protesters.

All the above had taken place one block north of Westlake Plaza, where the crowd was retreating. It was approximately 8:40 PM.

<u>End of the March and Gratuitous Arrests</u>

The demonstrators emptied into Westlake Plaza with the police behind them. A line of police in riot gear holding an array of less lethal weapons stood along the South end of the park and the Fourth Avenue. One of the organizers held out the permit and shouted through a bull horn that they had a right to be there; it was 8:42 PM.

The police in this line held a variety of weapons. These weapons included at least 1 shotgun, 1 single shot launcher, 2 six shot launchers, 1 large pepper spray, 1 AR-15/M16 type firearm, 1 Pepper Ball gun. Lt. Wilske was present with these officers.

Though a few of the demonstrators stayed around Westlake Plaza, the rally that had been planned for after the march could not, and did not take place.

Organizers worked to get the demonstrators to leave the area in small groups. Medics tried to treat the people who'd been injured, including those incapacitated by the chemical agents. No police made any attempt to treat any person injured by their attacks. In fact, for a time no ambulances came to the scene, and when a medic called, she was informed that the police had instructed them not to send an ambulance to Westlake Plaza unless the police

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

specifically authorized it. Finally, an ambulance was called by the police to take Plaintiff HILDES from the scene on a gurney. The police themselves did nothing to see to the treatment of any of the people they'd injured with their weaponry and tactics; in fact, Defendant SANFORD held a press conference just feet away from where paramedics were attending to Plaintiff HILDES.

<u>Chemical Agents Left Along Route; No Effort Made by Police to Clean</u>

With only a token number of demonstrators left, and perhaps because they were out of sight of the Red Lion Inn, the police relaxed their line around 9PM, first withdrawing those with the less-lethal weaponry, then, after a minute or so, the others. A line of officers in riot gear stood along the side of the wall by Seattle's Best Coffee at the South end of Westlake Plaza.

Several individuals who remained after this incident began to re-walk the path of the march, and collect the remains of the less lethal weaponry which had been used by the police. The debris from this weaponry they collected included the remains of several rubber grenades, several pepper balls, at least one of which had not exploded, wooden dowels, at least one "flying baton", the remains of 37mm/38mm shells and hundreds of rubber balls. Throughout the path of the march there were areas that were thick from the residue of chemical agents. The police made no effort to clean up the debris, to clean up any of the chemical agents, to collect any of the unspent rounds, or to warn any of the passersby (most of whom had nothing to do with the event) that they were exposing themselves to these chemical agents.

Several of these people re-walking the march route returned to Fifth Avenue between Union and Pike. There were no longer members of the Washington State Patrol, who could

COMPLAINT FOR DAMAGES –
Page 59 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

argue whether they had to obey the Seattle Ordinance in front of the Fifth Avenue entrance of the Red Lion Inn. Now there were members of the Seattle Police Department in front of the Red Lion Inn. It was about 9:12 PM.

Several large deposits of chemical agents were observed in front of the entrance to the Washington Mutual Bank at Fifth Avenue and Union at about 9:15. There was no effort being made to clean these up, or to warn people of these. Some of these chemicals were still wet.

There was another large deposit observed in the main intersection some feet away from the Washington Mutual entrance on this corner. There were dozens of rubber balls mixed in this deposit. Another deposit was in the Eastern crosswalk of this intersection. People walked freely through these deposits, and cars drove over them.

There were many, many rubber balls spread out in this area of Union Avenue at this time, which Defendant Sanford claimed were ball bearings thrown by the demonstrators. No actual ball bearings were ever found at the scene.

An officer Doe approached those documenting this and ordered those collecting this data back on the sidewalk. When asked if anyone was going to be cleaning this up, Doe denied knowledge and said it was not his job, then drove off. This officer drove a blue unmarked police car with a license that appeared to read: 342-10D.

Officers were available to guard innocuous locations. At least five officers in riot gear guarded the alley on Union between Fifth and Fourth Avenue. There was a large deposit of chemical agents on the sidewalk directly in front of them. When queried, as to whether it would be cleaned, the officers first compared it to papers in the street, then said it wasn't their job.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1    At about 9:37 PM, other large deposits of chemical agents were observed in and around

2  the intersection of Union Street and Fourth Avenue. These included deposits of chemical agents

3  in front of the entrance to Rainier Square, the Northwest interior portion of the intersection and

4  cross walk,  the East section of the intersection and crosswalk, multiple deposits on the South

5  side of the street in front of Lamont's at least one in front North side of the street in front of the

6  Men's Wearhouse, several around the fire hydrant around Fourth and Union, near the

7  intersection; the intersection in front of Tully's; in the street in front of 1411 Fourth Avenue;

8  several deposits of chemical agents in front of the West entrance of the Red Lion Inn, with a

9  smaller deposit in the center of the street in lining up with the mail box; another chemical agents

10  in front of the bus stop in North of the entrance of the Red Lion Inn; several deposits in front of

11  the Office Depot, on Fourth Avenue, another deposit on Fourth Avenue about midway between

12  the Walking Company on the East side, and the Joshua Green Building on West.  Approaching

13  Westlake Plaza there were chemical agents in the southern portion of the intersection of Fourth

14  and Pike, a few feet west of the curb   fragments of a rubber grenade were found in this area.

15  There were several chemical deposits and numerous rubber balls on Fourth Avenue, South of

16  Pike Street.

17      Several "pepper ball" rounds had struck the Northeast portion of the curb, portions of

18  their shells remained at the end of a small trail of the agents.  At least one round had been left

19  unexploded, it had a bright color and looked about the shape size and color of a sucking candy.

20  Fragments of grenades were found around this intersection.  The remains of what looked like

21  several pepper balls were found at the South end of Westlake Plaza, along with pieces of a 37,

22  38mm shells.  A large deposit of chemical agents was left in front of the entrance and ATM of

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

the Bank of America located on the South end of Westlake Plaza.  At least three large deposits of chemical agents were found by the planter boxes, just North of this Bank of America.  There was another deposit near the streetlight on the curb on the East side of Fifth Avenue, just West of this Bank of America.

Throughout the time these people attempted to gather documentation various police continued to shine lights in the lenses of their cameras, and threaten them with arrest.

Finally, those gathering documentation encountered police documenting the totality of the damage caused by all those at the demonstration.  These police admitted that the totality of the damage consisted of two spray painted "A";'s with circles around them.  One was in the cross walk near the Washington Mutual.  One was on the wall near the right front entrance of the Washington Mutual on Union.  This was at or slightly after 10:40 PM.

Captain Sanford held a press conference at the North End of Westlake Plaza.  Captain Sanford claimed in this conference that the police had tried to contain the demonstrators, but one had thrown a ball bearing at a bicycle officer.  Stanford did not produce the ball bearing. Stanford then flatly stated that the police formed a line and moved the demonstrators back to Westlake Plaza.  He did not mention any of the use of less lethal weapons that occurred.  He also accused the protesters of vandalism, but gave no specific incidents.  When asked, Sanford said he had no knowledge of any injuries from any of the less lethal weaponry.  Some of those in attendance showed Sanford weaponry that he identified as an "AR-1 Round" that fired a baton, and a wooden dowel.  When asked said he could not say what caused the use of rubber bullets and concussion grenades.  He claimed, without providing any of them, that the protesters had thrown debris, ball bearings, metal pipes and wooden dowels at the police.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

During this press conference, paramedics were treating Plaintiff HILDES for a back injury caused by a less-lethal projectile just feet away.

Subsequent Arrests

On subsequent days, several smaller demonstrations took place. These were also characterized by an atmosphere of intimidation by the police. Several demonstrators were arbitrarily arrested, as were people who tried to videotape or otherwise record these events.

Despite the fact that many of the people arrested faced criminal charges, and went through extensive Discovery requests, none of the material Sanford alleged that had been thrown at the police was ever produced. With one exception, none of the many people arrested were ever convicted. The young, man who was thrown over the railing was never prosecuted.

Much of the videotape belonging to videographers and other media producers who were arrested, was "lost" by the police.

III. STATEMENT OF DAMAGES

3.1     As a direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiffs sustained severe physical and mental pain and suffering and injury in an amount that will be established at trial.

3.2     As a further direct and proximate result of the intentional and/or negligent acts of Defendants, Plaintiffs were required to seek medical treatment and care, and will be required to seek future medical treatment and care, the exact amount of the expense for medical treatment and care will be established at the time of trial.

COMPLAINT FOR DAMAGES –
Page 63 of 75

3.3     As a further direct and proximate result of the intentional and/or negligent acts of the Defendants, said Defendants deprived Plaintiffs of their physical property, the tools of their trade, and/or their work product, and acted with specific intent to deprive them of their work product.

3.4.     Plaintiffs are entitled to compensation for the Constitutional harms Defendants inflicted on them including loss of liberty, intentional deprivation of property, and arbitrary and excessive exercise of force against them.

3.5.   As a result of Defendants intentional and/or negligent conduct, Plaintiffs were forced to defend themselves against improper criminal actions and to retain counsel to vindicate them in those cases, to which they are entitled to be reimbursed.

## IV. CAUSES OF ACTION:

### COUNT ONE

Violation of Civil Rights

(Title 42 U.S.C. Section 1983)

(AS TO ALL PLAINTIFFS)

(As To All Individual Defendants)

4.1.   Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 3.5 of this complaint.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

4.2.  In committing the acts complained of herein, Defendants acted under color of state law to deprive Plaintiffs as alleged herein, of certain constitutionally protected rights including, but not limited to:

 (a) the right not to be deprived of liberty without due process of law;

 (b) the right to be free from invasion or interference with Plaintiffs' zone of privacy;

 (c) the right to freedom of speech;

 (d) the right to freedom of association;

 (e) the right to equal protection of the law;

 (f) the right to petition the government for a redress of grievances:

 (g) the right to be free from police use of excessive force;

 (h) the right to be free from discriminatory law enforcement;

 (i) The right to be free from unreasonable search and seizure.

4.3  In violating Plaintiffs rights as delineated above, and other rights according to proof, Defendants acted by direct arrest and/or use of force, or by setting the chain of events in motion that led to those arrests and uses of force, Defendants acted to violate Plaintiffs rights under the First, Fourth, Fifth, and Eighth Amendments to the U.S. Constitution.

4.4.  Defendants specifically violated Plaintiffs' First, Fourth, Fifth and 14th Amendment Rights by acting to retaliate against Plaintiffs for their exercise of their First Amendment Rights to gather, associate, and express their political views.

4.5  As a direct and proximate result of the violation of their Constitutional rights by Defendants Plaintiffs suffered general and special damages as alleged in this complaint for an amount to proven at trial.

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

4.6   The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## COUNT TWO

Violation of Civil Rights

(Title 42 U.S.C. Section 1983)

(AS TO *ALL* PLAINTIFFS)

(As To Defendants CITY OF SEATTLE and SEATTLE POLICE DEPARTMENT)


4.7   Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 4.6 of this complaint.

4.8   At all times herein mentioned, Defendant SANFORD acted in his official capacities as a Captain of Defendant SEATTLE POLICE DEPARTMENT and pursuant to a policy of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT, and directly controlled by the Seattle Police Department to deprive Plaintiffs and others of their rights secured by the Constitution of the United States, including, but not limited to their rights under the First, Fourth, Fifth, and 14th Amendments to the U.S. Constitution.

4.9 At all times herein mentioned, Defendant SANFORD acted in his official capacities as Captain of Defendant Seattle Police Department's and pursuant to a policy of the CITY OF SEATTLE and the SEATTLE POLICE DEPARTMENT to deprive Plaintiffs and others of their

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

rights secured by the Constitution of the United States, including, but not limited to their rights under the First, Fourth, Fifth, and 14th Amendments to the U.S. Constitution.

4.10. In committing the acts complained of herein and in their official capacities as officials of Defendant CITY OF SEATTLE, and SEATTLE POLICE DEPARTMENT Defendants SANFORD and WILSKE acted with a design and intention to deprive Plaintiffs of their rights secured by the Constitution of the United States and acted with deliberate indifference to Plaintiffs rights.

4.11. As a direct and proximate result of the acts complained of herein, Plaintiffs have suffered general and special damages as set forth in this complaint for an amount to proven at trial.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth

## COUNT THREE

Violation of Civil Rights

(WASHINGTON STATE CONSTITUTION)

(As to All Plaintiffs)

(As to All Defendants)

4.13     Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 4.12 of this complaint.

4.14     Defendants' use of force on Plaintiffs was unlawful because it was based on conduct that is protected as freedom of the press and freedom of speech under Article 1 of the Washington State Constitution, Section 5.

COMPLAINT FOR DAMAGES –
Page 67 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

4.15    Plaintiffs were acting legal observers and were not obstructing or interfering with Defendants' duties.   Defendants had no legal reason to use force on Plaintiffs and did so in direct retaliation for their exercise of those Article 1 Rights.

4.16    All Plaintiffs were arrested for exercising their Article 1 protected right to free speech without obstructing the arrests or any other police activity.

4.17   As a direct and proximate result of the violation of their Constitutional rights by Defendants Plaintiffs suffered general and special damages as alleged in this complaint for an amount to proven at trial.

4.18   The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## COUNT FOUR

### Assault and Battery

(AS TO ALL PLAINTIFFS)

(As to All Defendants)


4.19    Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 4.18 of this complaint.

4.20. Defendants use of blows, use of chemical agents, use of less-lethal and impact projectiles including rubber balls, wooden dowels and batons, and all other physical contact pursuant to the activities carried out against all Plaintiffs on June 2, 2003, was carried out

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   intentionally, without consent or lawful authority, or legitimate police purpose, and therefore

2   constituted common law battery.

3       4.21    All of the above tortious conduct caused Plaintiffs to reasonably fear imminent

4   harm to their health and safety, and additional tortious use of force.  This fear constitutes a

5   common law assault.

6       4.22    As a direct and proximate result of the violation of their rights by Defendants, and

7   of Defendants' tortuous conduct towards Plaintiffs, Plaintiffs suffered general and special

8   damages as alleged in this complaint for an amount to proven at trial.

9

10      4.23    The abuse of Plaintiffs was directly and proximately caused by Defendants'

11  operations plan and the attitudes towards the demonstration and towards Plaintiffs that allowed it

12  to be created and implemented and promoted the hostile climate towards Plaintiffs' First

13  Amendment protected activities and the conduct to which Plaintiffs and others were subjected.

14      4.24  The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and

15  was of such a nature that punitive damages should be imposed in an amount commensurate with

16  the wrongful acts alleged herein.

17      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

18

19

                              COUNT FIVE
20

                  Common Law /Conversion/ Trespass to Chattel
21

    (AS TO PLAINTIFFS HILDES AND JONES)
22

    (As to all Defendants)
23

        4.25.  Plaintiffs reallege and incorporate herein by reference the allegations set forth in
24

25  Paragraphs 1 through 4.24 of this complaint.

COMPLAINT FOR DAMAGES –
Page 69 of 75

4.26.   Plaintiffs HILDES and JONES were sprayed extensively with pepper spray. As a result, Plaintiffs had to dispose of articles of clothing they were wearing at the time of the Incidents.

4.27   The destruction of Plaintiffs' clothing by making it unusable because of contamination with pepper spray constitutes common law conversion or trespass to chattels.

4.28   As a direct and proximate result of the violation of their Constitutional rights by Defendants and Defendants' other tortious conduct, Plaintiffs suffered general and special damages as alleged in this complaint for an amount to be proven at trial.

4.29   The conduct of Defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed in an amount commensurate with the wrongful acts alleged herein.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.


## COUNT SIX

### Intentional Infliction of Emotional Distress

(AS TO ALL PLAINTIFFS)

(As to All Defendants)


4.30   Plaintiffs reallege and incorporate herein by reference the allegations set forth in Paragraphs 1 through 4.29 of this complaint.

4.31   In carrying out the plan and acts alleged throughout this complaint, Defendants, and each of them sought to cause emotional distress and trauma to Plaintiffs and others, and Plaintiffs did suffer such emotional distress with accompanying physical symptoms.

COMPLAINT FOR DAMAGES --
Page 70 of 75

1      4.32  As a direct and proximate result of the violation of his constitutional rights by

2 Defendants and their other tortuous conduct against them, Plaintiffs suffered general and special

3 damages as alleged in this complaint for an amount to be proven at trial.

4      4.33     The conduct of Defendants was willful, malicious, oppressive, and/or reckless,

5 and was of such a nature that punitive damages should be imposed in an amount commensurate

6 with the wrongful acts alleged herein.

7      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

8

9

10                    <u>COUNT SEVEN</u>

11                     Negligence

12 (AS TO ALL PLAINTIFFS

13 (As to All Defendants)

14

15      4.34  Plaintiffs reallege and incorporate herein by reference the allegations set forth in

16 Paragraphs 1 through 4.33 of this complaint.

17      4.35  Defendants, and each of them, owed Plaintiffs a duty to use due care at or about the

18 times of the aforementioned incidents.

19      4.36  In committing the aforementioned acts and/or omissions, Defendants, and each of

20 them, negligently breached said duty to use due care, directly and proximately resulting in the

21 injuries and damages to the Plaintiffs as alleged herein.

22      WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

23

24

25

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

COUNT EIGHT

42 USC §1983 - Violation of First Amendment Rights to Free Expression, Assembly, and

Association

(All Adult Plaintiffs Against all Individual Defendants)

4.37  Plaintiffs reallege and incorporate by reference herein paragraphs 1.1 through 4.36.

4.38  The conduct of all of the individual defendants violated the rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution, to free expression, to free association, to assemble peacefully, and to petition the government for redress of grievances for which they seek redress pursuant to 42 USC § 1983.

4.39  Plaintiffs incurred medical expenses for the treatment of their injuries and are entitled to actual damages for medical expenses in an amount to be determined at trial.

4.40  As a direct and proximate cause of defendants' actions, each of the plaintiffs suffered substantial physical injury, including but not limited to severe eye and skin burning, skin swelling and redness, wheezing and otherwise labored breathing, coughing, and temporary blindness.  Plaintiff HILDES also suffered substantial physical injury from being shot with impact weapons, including baton rounds, wooden dowels, or pepper balls, and from being struck with a bicycle.  Plaintiff WEILL also suffered substantial physical injury from being struck by one of Defendants' bicycles.  Plaintiff HAMILTON also suffered substantial physical injury from being struck by batons wielded by Defendants.  Plaintiffs also suffered substantial physical injuries due to other assaults and batteries perpetrated by Defendants.

4.41  In addition to their physical pain and suffering, each of the adult plaintiffs also suffered emotional injuries and a severe limitation of their ability to practice and enjoy their rights guaranteed to them as citizens of the United States of America under the United States Constitution.  As compensation, each of the adult plaintiffs should be awarded general damages in an amount to be proven at trial.

4.42  In addition to the immediate pain and suffering incurred by these plaintiffs, it is

COMPLAINT FOR DAMAGES –
Page 72 of 75

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013

1   likely that they also will suffer long-term health effects from the chemical agents, and Plaintiff

2   HILDES from the back injury he suffered.  As compensation, each of the adult plaintiffs should

3   be awarded general damages in an additional amount to be proven at trial.

4       4.43  Defendants acted with malicious intent and with reckless and callous indifference

5   to Plaintiffs' health, safety, and federally protected rights.  Their conduct was extreme and

6   outrageous and these defendants could not have reasonably believed their conduct was justified

7   or related to any legitimate police purpose.  As such, plaintiffs seek damages in an amount to be

8   proven at trial.

9       4.44  Plaintiffs are entitled to their reasonable costs and attorneys fees pursuant to 42

10   U.S.C. §1988.

11                          COUNT NINE

12   42 USC §1983 - Violation of First Amendment Rights to Free Expression and Assembly

13   (All Plaintiffs Against City of Seattle)

14

15       4.45  Plaintiffs reallege and incorporate by reference herein paragraphs 1.1 through

16   4.44.

17       4.46  The customs, policies, and practices of defendant City of Seattle described in this

18   Complaint, caused violations by the individually named police officers and supervisors of the

19   rights of Plaintiffs under the First and Fourteenth Amendments to the United States Constitution,

20   to free expression, to free association, to assemble peacefully, and to petition the government for

21   redress of grievances for which they seek redress pursuant to 42 USC § 1983.

22       4.47  Plaintiffs incurred medical expenses for the treatment of their injuries.  Plaintiffs

23   are entitled to actual damages for medical expenses.  Additional medical treatment may be

24   incurred and the cost is yet to be determined.

25       4.48  As a direct and proximate cause of the actions of the municipal defendants, each of

COMPLAINT FOR DAMAGES –
Page 73 of 75

the plaintiffs suffered substantial physical injury, including but not limited to severe eye and skin burning, skin swelling and redness, wheezing and otherwise labored breathing, coughing and temporary blindness. Plaintiffs also suffered substantial physical injury from being shot with rubber balls, and/or stinger ball grenades, and/or flying batons, and/or wooden dowels, and/or pepper balls. In addition to their physical pain and suffering, each of the adult plaintiffs also suffered emotional injuries and a severe limitation of their ability to practice and enjoy their rights guaranteed to them as citizens of the United States of America under the United States Constitution. As compensation, each of the adult plaintiffs should be awarded general damages in an amount to be proven at trial.

4.49  In addition to the immediate pain and suffering incurred by these plaintiffs, it is likely that they also will suffer long-term health effects from the chemical agents. As compensation, each of the adult plaintiffs should be awarded general damages in an additional amount to be proven at trial.

4.50  Plaintiffs are entitled to their reasonable costs and attorneys fees pursuant to 42 U.S.C. §1988.

## V. JURY TRIAL DEMAND

5.1.  Plaintiffs hereby demand a jury trial in this matter.

## VI.  PRAYER

WHEREFORE, Plaintiffs pray for judgment against the Defendants as follows:

1.      For general damages including pain and suffering together with special damages for Plaintiff's reasonable and necessary legal expenses and medical expenses and related treatment both past and future, the exact amount of which will be established at the time of trial;

COMPLAINT FOR DAMAGES –
Page 74 of 75

2. For punitive damages in an amount to be proven at trial pursuant to Federal and State law;

3.      For actual attorneys' fees and litigation costs pursuant to 42 U.S.C. 1988;

4       For statutory attorneys' fees and costs;

5.      For court supervised crowd control and media access and enforcement policies;

6       To award Plaintiffs injunctive relief, specifically to order the Seattle Police to cease and desist from spraying chemical agents, firing impact weapons including rubber balls, wooden dowels and flying batons, firing pepper balls and throwing stinger ball or flash bang grenades for the crowd control of peaceful protestors;

7. To declare that the Defendants violated the above named constitutional rights and common law rights of all Plaintiffs;

8. To award Pre- and post-judgment interest on all amounts awarded; and

9. For such other and further relief as the Court deems just and proper.

DATED this 18th day of May, 2006

Isak Bressler, WSBA #31747
Attorney for the Plaintiffs

ISAK BRESSLER
Attorney at Law
6750 15th Avenue NW
Seattle, WA 98117
(206) 957-9010; Fax (206) 957-9013